CHARLES TAYLOR and DOROTHY F. TAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket Nos. 5089-79, 22051-80.
United States Tax Court
T.C. Memo 1982-114; 1982 Tax Ct. Memo LEXIS 635; 43 T.C.M. (CCH) 727; T.C.M. (RIA) 82114; March 8, 1982. Charles Taylor, pro se. Rona Klein, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1976 and 1977 in the amounts of $ 1,220 and $ 776, respectively, and an addition to tax under section 6653(a), [1] for the calendar year 1977 in the amount of $ 39. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision (1) whether petitioner Charles Taylor is entitled to all or any part of the deduction he claimed in each of the years here in issue for home office expenses, and (2) whether petitioners are entitled to a medical expense deduction in the year 1977 for food purchased for two of their children who had allergies. *636 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided at Bay Shore, New York, at the time of the filing of each of their petitions in this case, filed joint Federal income tax returns for the calendar years 1976 and 1977. During the years 1976 and 1977, Charles Taylor (petitioner) was employed as a shop teacher at South Junior High School in Brentwood, New York. The South Junior High School building where petitioner taught was open and accessible to the teaching staff during the years here in issue at approximately 7:30 a.m. Petitioner's classroom teaching on a typical day began at 8:00 a.m. and ended at approximately 2:30 p.m. During this period of time petitioner had a lunch period and a preparation period, each approximately 40 minutes in length. The classroom in which petitioner taught and had his desk had tables in the front at which the students could work and a shop with all the necessary equipment for teaching a shop class in the back. The desk which was assigned to petitioner was a drawing table with drawers. This desk was in the room in which petitioner taught four classes each day. There *637 was another room which had a less adequate shop in which petitioner taught one of his classes during the years here in issue. During the periods of the school day when petitioner was not teaching a class he could use his desk in the classroom in which most of his classes were taught unless that room was being used by another teacher as a classroom. If the room was being used by another teacher, petitioner had available for use the faculty lounge and generally the school library, although at times a class or lecture might be held in the library, making it difficult for faculty members to use it for purposes of work. The school was available for teachers' use after school hours until the time the late buses left. The first set of late buses arrived at the school between 3:15 and 3:20 p.m. and the final set of late buses, which were used to take athletes home, arrived at the school at approximately 5:00 p.m. On most Saturday mornings, teachers at the South Junior High School in Brentwood could arrange to be in the building for the four morning hours. Generally a custodian would be there during those hours making repairs to the building. However, there were times when the school *638 building was not available to teachers on Saturday morning. Petitioner was not required by South Junior High School in Brentwood or the school district to maintain any office or shop in his home. However, because petitioner believed he could better prepare to teach his courses if he had a shop available in his home, he did maintain one room in his home as a shop. He kept the equipment there necessary to work out projects for his students and to make models of any items he intended to have the students make in class. It was petitioner's view that by working on these models in his home shop he would iron out any problems that might arise when the students were assigned to make the items and thereby increase the safety of the students in his shop classes. Petitioner had both boys and girls in his shop classes and also had some students who were considered special students because of their difficulties in learning academic subjects. He worked out programs for these students in his home shop with an idea of assisting them in improving their skills and awareness in working with tools, as well as making informed and meaningful decisions as to occupational choices. Petitioner had *639 an arrangement with the school principal whereby he was permitted to return to his home, which at the time was in the Brentwood area, during his free period for preparation provided he signed out when he left and signed in upon his return. Petitioner's home was approximately one-half mile from the school, and petitioner could drive from the school to his home in less than five minutes. It was very rare for a teacher at the South Junior High School in Brentwood to be granted permission to leave the school during his preparation period. Most teachers either used a classroom, the library or the faculty lounge for any preparation work they did during their free period. Petitioner was permitted to leave the school during his preparation period since the principal of South Junior High School considered it advantageous to the school for petitioner to be able to work in the shop he maintained at his home during his preparation period. Problems with vandalism to cars at the school often occurred after the normal school day and, in fact, when petitioner was at the school around 3:15 one afternoon in 1980 the glass in the window of his car was broken by a vandal. The school district would *640 not reimburse a teacher for vandalism to his automobile that occurred around the school after school hours. During the years here in issue, petitioners shared their home with their four children. During the year 1977, two of petitioners' children were allergic to certain foods, including citrus fruits, processed meat, seafood and certain types of milk. Because of this, petitioners bought milk for these two children from a place called the "Dairy Barn" that sold milk that did not have certain additives which were in milk bought at a supermarket. Petitioners bought apples for the two children who had allergies to citrus fruit, and on the days when the rest of the family were served processed meat or seafood a substitute for this food would be purchased for the two children who had allergies. Petitioners, on their Federal income tax return for each of the years 1976 and 1977 claimed a deduction based on the use of 20 percent of their home as an office for Mr. Taylor in connection with his position as a shop teacher. On their 1976 income tax return, petitioners took as a miscellaneous deduction $ 1,301 for the costs associated with the shop which petitioner maintained in his home, *641 which amount was arrived at as follows: Water
$ 120
Gas
400
Electricity
481
Oil
1,116
Fire Insurance
135
Maintenance
350
Depreciation of House
533
Mortgage Payments
3,372
$ 6,507
20 percent
$ 1,301
The mortgage payments which are part of the computation of the home office deduction in 1976 included the $ 1,343 in real estate taxes and $ 1,734 in mortgage interest which were fully deducted on Schedule A of petitioners' 1976 income tax return. On their 1977 income tax return, petitioners took as an employee business expense deduction $ 1,490.40 for the costs associated with the shop which petitioner maintained in his home, which amount was arrived at as follows: Mortgage Payments
$ 3,816.00
Electricity
380.00
Oil and Gas
1,008.00
Telephone
470.00
Water
120.00
Home Insurance
190.00
Depreciation
1,100.00
Maintenance
368.00
$ 7,452.00
20 percent
$ 1,490.40
The mortgage payments which were part of the computation of the home office deduction in 1977 included the $ 1,457.37 in mortgage interest paid and $ 1,468.75 of real estate taxes which were fully deducted on Schedule A of petitioners' 1977 income tax return.
*642 Petitioners, on their 1977 Federal income tax return deducted as a part of their claimed medical and dental expenses the amount of $ 1,850 for nonallergic food for two of their children. Respondent in his notices of deficiency to petitioners disallowed the amount they deducted in each of the years 1976 and 1977 as home office expenses and disallowed the $ 1,850 petitioners claimed for cost of nonallergic food in 1977 as part of their medical expense deduction. OPINION Section 280A, [2] insofar as here relevant, provides that no deduction otherwise allowable shall be allowed to an individual with respect to use of a dwelling unit except as provided in that section. The exceptions provided for with respect to a part of a dwelling unit used by a taxpayer in connection with his trade or business are (1) for a portion of the unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer; (2) as a place of business which is used by patients, clients or customers in meeting or dealing with the taxpayer in the normal course of his trade or business; or (3) a separate structure which is not attached to the dwelling unit *643 which is used in connection with the taxpayer's trade or business. The section provides that in the case of an employee, the exceptions shall only apply if the exclusive use of the portion of the dwelling unit is for the convenience of his employer. *644 In our view, petitioner's use of a part of his home does not fall within any of the exceptions provided for in section 280A. Petitioner's home was not his principal place of business. Rather, the South Junior High School in Brentwood was petitioner's principal place of business. Petitioner carried on his teaching activities at the school. Petitioner's occupation was teaching, and therefore the school was the place where he conducted his principal business. As pointed out in , it is necessary to examine the various locations in which a taxpayer conducts business to ascertain which location is the focal point of the business activity. In the instant case it is clear that the focal point of petitioner's business as a teacher was the school. See . [3]
There is no evidence in this record to show that the *645 shop which petitioner maintained in hos home was ever visited by any of his students or their parents. Petitioner, in his opening statement, did state that his use of a part of his home as an office and shop was helpful and appropriate in his employment because his home was open and was used for conferences with parents concerned with their child's school performance and behavior. No evidence was offered that any parents ever actually came to petitioner's home to confer with respect to their child's school work or, if they did, that the conference was held in the part of petitioner's home used as a shop. The entire focus of petitioner's testimony was the necessity of a home shop in the planning of his school work. From all of the evidence introduced in this record the inference is clear that the shop petitioner maintained in his home was not in a separate structure which was not attached to his dwelling unit. Further, the record is clear that petitioner was not required by the school district to maintain a shop in his home and for this reason petitioner, who as a teacher was an employee, has failed to show that he maintained the shop in his home for the convenience of his employer. *646 We conclude that petitioner has failed to show that he is entitled to deduct any portion of the cost of maintaining the shop in his home under the provisions of section 280A except the taxes paid on his home and the interest paid on the mortgage on his home as provided in subsection (b) of section 280A. However, the stipulated facts which we have found show that petitioner claimed the deductions for the taxes paid with respect to his home and the interest paid on the mortgage on his home in each of the years here in issue as separate items on Schedule A of his return. We do not doubt, as petitioner strenuously argued, that maintaining the shop in his home was appropriate and helpful in connection with his work as a shop teacher at South Junior High School in Brentwood. However, for the years here involved to which section 280A is applicable, these criteria are not determinative with respect to the allowance of a deduction for maintaining a home office as a place of business. We therefore sustain respondent's disallowance of petitioners' claimed deductions for home office expenses. The record shows that two of petitioners' children had allergies and for that reason were unable *647 to eat certain foods which were eaten by the other members of the family. However, the record is clear that the non-allergic foods which petitioners bought for these children were substitutes for the regular foods which they otherwise would have eaten and satisfied the nutritional requirements of the children. There is no showing whatsoever in this record that the substitute foods bought for the two children who had allergies were more expensive than the other foods to which they were allergic. For instance, petitioner testified that these two children could not eat citrus fruit; so when he bought citrus fruit for the other members of the family, he bought apples for the two children with allergies. There is no showing in the record that the apples petitioner bought were more expensive than the citrus fruit purchased for other members of the family. Petitioner also testified that he bought milk for these children at a place called the "Dairy Barn." However, there is no showing in the record that the milk he bought at the "Dairy Barn" was more expensive than milk bought at a regular grocery store. We have consistently held that where special food or beverage is used by an individual *648 with a medical problem as a substitute for food or beverage normally consumed by that individual to satisfy his nutritional requirements, the cost of such food or beverage is a personal expense. ; . It is only where it is shown that the cost of the food medically prescribed for the individual exceeds the cost of comparable food consumed by other individuals that any medical expense deduction is allowed for such food. Under these circumstances only the excess of the cost of the special food over the regular food is an allowable medical expense deduction. . We therefore sustain respondent's disallowance of petitioner's claimed medical expense deduction for the cost of nonallergic food. Petitioner offered no evidence with respect to the addition to tax under section 6653(a) for the year 1977, so we have not considered this addition to tax to be in issue in this case. Because of certain issues disposed of by agreement of the parties, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Sec. 280A provides, in part, as follows: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (b) Exception for Interest, Taxes, Casualty Losses, Etc.-- Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity). (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) as the taxpayer's principal place of business, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.↩
3. See also , and , in which we specifically held that the principal place of business of a teacher is the school in which he teaches.↩